CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
10/29/2019
JULIA C. DUDLEY, CLERK
BY: /s/ J. JONES
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| CHARLES WIMER, | |
| Plaintiff, | Civil Action No. 3:19CV00021 |
| v. | **MEMORANDUM OPINION** |
| GREENE COUNTY GENERAL CIRCUIT COURT, ET AL., | By: Hon. Glen E. Conrad<br>Senior United States District Judge |
| Defendants. | |

This matter is before the court on the Defendants' motions to dismiss the Plaintiff's pro se complaint. ECF Nos. 8, 12, & 14. For the reasons stated below, the court grants the Defendants' motions. Plaintiff has also filed a motion for discovery, (ECF No. 24), and a motion for injunctive relief, (ECF No. 25). The court previously stayed these motions while it ruled on the Defendants' motions to dismiss. ECF No. 34. Because the court dismisses Plaintiff's claims, it will also deny his motions for discovery and for injunctive relief.

**Background**

Pro se plaintiff Charles Wimer brought suit against numerous Greene County Virginia government entities, the Central Virginia Regional Jail, and employees of those entities. Compl. at 1. Wimer asserts claims under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., (the "ADA") and Section 504 of the Rehabilitation Act, 29 U.S.C. § 701, ("Section 504").

Wimer is a defendant in a criminal case pending in Greene County Circuit Court, at least originally before Judge Dale Durrer.[1] Compl. at 2–3; Commonwealth v. Wimer, Case No. CR18000219-00 (Greene Cnty. Cir. Ct. Aug. 7, 2018). Wimer alleges that he has been diagnosed

---

[1] It is unclear from the pleadings and public records whether Judge Durrer has reassigned Wimer's case. See ECF No. 18.

with certain "learning disabilities" and "emotional disorders" as a child and as an adult. Id. at 1. Wimer also attaches a psychological evaluation report to his complaint, which conveyed test results that "clearly indicate[d]" that Wimer "has learning disabilities." Id. 15–17. The report also notes that Wimer has "functional" reading skills, but his "spelling and writing skills remain problematic." Id. Wimer alleges that he requested "accommodations" in his criminal case to accommodate his disabilities: a "qualif[ied] reader [and] writer." Id. at 2. Judge Durrer, after hearing Wimer's request, appears to have found that Wimer's court-appointed attorney could sufficiently accommodate his needs. Id. at 2–3.

Wimer also alleges that the Defendants "creat[ed] communication barriers to prevent [him] from fil[ing] claim[s]" and that they "failed [t]o develop policies and procedures that protect individuals with disabilities." Id. at 1–2. Wimer does not explain what "claim[s]" he has been unable to bring, other than to reference paperwork he attempted to file on "January 7th." Id. at 3. Wimer has also retained an attorney and pursued FOIA requests.[2]

Wimer alleges several interactions with Greene County court staff. When he asked for "assistance in filling out" paperwork, court staff recommended he go to legal aid for help at one point. Id. At other times, staff members have "helped to do some writing in the past and reading," helped him with document requests, and "assisted" Wimer in "filling out the paperwork for [a] court-appointed attorney," as well as "addresses [and] some names" in civil filings. ECF No 18.

Wimer alleges that the Central Virginia Regional Jail failed to accommodate his leaning disability. Compl. & ECF No. 18. However, Wimer also attaches to his complaint a July 20, 2018 "Synopsis" from Major R. Davis signed by Wimer, explaining that Wimer specifically declined to

---

[2] Wimer has clarified his allegations in his opposition with the aid of a "voice to text" cellphone application. ECF No. 18. In light of Wimer's pro se status, the court will incorporate the facts alleged in Wimer's opposition into his complaint for purposes of deciding Defendants' motions.

request any accommodations when presented the option in jail, but that Davis informed court staff that Wimer might request accommodations.

Wimer further alleges that the Central Virginia Regional Jail failed to "provide adequate medical accommodations" related to a digestive disorder. Wimer clarifies in his opposition to the Defendants' motions to dismiss that he suffers from irritable bowel syndrome, and that he was "only given Pepto" to treat it. ECF No. 18.

Finally, Wimer alleges vague failures by unspecified Defendants to train various parties, including court staff, a Sherriff's department, Judge Durrer, and the "release desk for the jail." Compl. at 2; ECF No. 18.

**Procedural History**

Wimer filed his complaint on March 19, 2019 in the Circuit Court of Greene County. See Compl. Wimer seeks a "consent decree [w]ith the state of Virginia," and unspecified damages for "mental anguish [and] injuries." Id. at 3–4. Defendants removed this case from state court on April 9, 2019. The Defendants have moved to dismiss Wimer's complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

**Discussion**

Wimer's complaint seeks relief under Section 504 of the Rehabilitation Act and Title II of the ADA. These statutes prohibit discrimination against an individual because of his or her disability. 29 U.S.C. § 794(a) (prohibiting discrimination on the basis of disability against an "otherwise qualified individual with a disability" in the administration of federal programs); 42 U.S.C. § 12132 ("[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of

a public entity, or be subjected to discrimination by any such entity.").

I.      **Subject Matter Jurisdiction**

A party may file a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). A plaintiff bears "the burden of proving that subject matter jurisdiction exists." Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). In considering a motion to dismiss pursuant to Rule 12(b)(1), a court should "regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Id. (internal quotation marks omitted). A court should grant the motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id. (internal quotation marks omitted).

In this case, the Defendants argue that Wimer is asking the court to reexamine a decision by Judge Durrer to decide what accommodations Wimer is due in a pending criminal prosecution, and argue the court has no jurisdiction to hear that claim under the Rooker-Feldman doctrine. ECF No. 13 at 8. Defendants also argue the remainder of Wimer's claims are "inextricably intertwined" with Judge Durrer's ruling and, thus, similarly subject to dismissal. Id.

The Rooker-Feldman doctrine limits federal trial courts' jurisdiction to review state court decisions. D.C. Ct. of App. v. Feldman, 460 U.S. 462, 483 n.16 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415–16 (1923). In sum, Rooker-Feldman prevents a losing party in state court from "complaining of an injury caused by the state-court judgment and seeking federal-court review and rejection of that judgment." Skinner v. Switzer, 562 U.S. 521, 531 (2011). The doctrine "precludes not only review of adjudications of the state's highest court, but also the decisions of its lower courts." Jordahl v. Democratic Party of Virginia, 122 F.3d 192, 199 (4th Cir. 1997). Rooker-Feldman's bar "extends not only to constitutional claims presented to or

adjudicated by the state courts but also to claims that are inextricably intertwined with a state court judgment." LaMar v. Ebert, 681 F. App'x 279, 287 (4th Cir. 2017) (quotation marks omitted).

Yet the Supreme Court has been firm that Rooker-Feldman is a "narrow" and "limited" doctrine. Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 283–92 (2005). "If a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . ., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." Id. at 293 (quotation marks and alterations omitted). If the party losing in state court "seeks redress in the federal district court for the injury caused by the state-court decision, his federal claim is, by definition, 'inextricably intertwined' with the state-court decision, and is therefore outside of the jurisdiction of the federal district court." Davani v. Virginia Dep't of Transp., 434 F.3d 712, 719 (4th Cir. 2006). By contrast, a federal complaint which raises claims independent of, and merely in tension with, a state court judgment, the Rooker-Feldman doctrine "is not an impediment to the exercise of federal jurisdiction" simply because "the same or a related question was earlier aired between the parties in state court." Thana v. Bd. of License Comm'rs for Charles Cty., Md., 827 F.3d 314, 320 (4th Cir. 2016) (internal quotation marks omitted).

The court partially agrees with the Court Defendants: the court lacks subject matter jurisdiction over a narrow aspect of Wimer's claims. Specifically, the court has no jurisdiction to determine whether Wimer is entitled to a qualified reader and writer—aside from his appointed counsel—in his pending criminal prosecution. Judge Durrer has already ruled on that question, and Wimer cannot challenge it in federal court. See Sykes v. Cook Cty. Circuit Court Prob. Div., 837 F.3d 736, 740 (7th Cir. 2016) (federal court did not have jurisdiction to review state court decision not to allow service animal into courtroom brought under the guise of an ADA claim);

5

Charnock v. Virginia, No. 2:16-CV-493, 2017 WL 5574987, at *4 (E.D. Va. Jan. 5, 2017) (holding claim was barred under Rooker-Feldman doctrine where plaintiff sought "a determination that [] Defendants erroneously denied his motions for a guardian ad litem and a continuance," in a state court divorce proceeding "and that they wrongly denied Plaintiff's request for ADA accommodations"). More simply stated, Wimer must take up any disagreement he has with Judge Durrer's ruling on appeal in state court. Charnock, 2017 WL 5574987, at *3. The court dismisses that claim with prejudice.[3]

The court cannot agree, however, that Rooker-Feldman bars it from hearing all of Wimer's claims. For example, Wimer alleges some form of conduct within Central Virginia Regional Jail related to purported digestive issues and reading disorders. There is no evidence, and the court doubts there can be, that Judge Durrer's ruling caused that injury. The court concludes that it has jurisdiction over this claim.

Similarly, Wimer alleges injuries that occurred while attempting to file paperwork in various court clerk's offices. Even if Wimer was seeking to file a suit for the express purpose of collaterally attacking Judge Durrer's order, he has alleged a distinct injury—regarding access to the civil justice system, and allegedly caused by court staff and policy—than that injury purportedly caused by Judge Durrer's ruling. The court cannot agree that these claims are "inextricably intertwined" with Judge Durrer's decision. See Thana, 827 F.3d at 321 (holding there was federal jurisdiction where the plaintiff challenged "the action of a state administrative agency, rather than alleging injury caused by a state court judgment") (emphasis in original). As

---

[3] The court also agrees with the Defendants that it would lack jurisdiction over this dispute under the Younger doctrine. See Younger v. Harris, 401 U.S. 37, 46 (1971) ("[I]n view of the fundamental policy against federal interference with state criminal prosecutions, even irreparable injury is insufficient unless it is both great and immediate . . . . Certain types of injury, in particular, the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, could not by themselves be considered 'irreparable' in the special legal sense of that term."). When applying Younger abstention, however, the court may only stay, not dismiss a case. Lucas v. Henrico Cty. Pub. Sch. Bd., 767 F. App'x 444, 448 (4th Cir. 2019).

6

a result, the court concludes that it has jurisdiction over these claims as well.

## II. Failure to State a Claim Under Title II

The court turns to Wimer's remaining Title II and Section 504 claims under Rule 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation marks omitted). Federal courts must construe pro se pleadings liberally. See, e.g., Erickson v. Pardus, 551 U.S. 89, 94 (2007). Nevertheless, "[p]rinciples requiring generous construction of pro se complaints are not . . . without limits." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). A pro se plaintiff must still "demonstrate more than a sheer possibility that a defendant has acted unlawfully," and "articulate facts that, when accepted as true, demonstrate he has stated a claim entitling him to relief." Hodge v. Gansler, 547 F. App'x 209, 210 (4th Cir. 2013) (quotation marks omitted).

To begin, only public entities are subject to the provisions of Title II of the ADA and Section 504. See 42 U.S.C. § 12132; City & Cty. of San Francisco v. Sheehan, 135 S. Ct. 1765, 1773 (2015) ("Only public entities are subject to Title II."); Barnes v. Young, 565 F. App'x 272, 273 (4th Cir. 2014) (noting that Title II does not provide for individual capacity suits against state officials). The term "public entity," as it is defined within the statute, does not include individuals. See 42 U.S.C. § 12131(1). Accordingly, the court dismisses any of Wimer's claims against individual Defendants in their individual capacities.

The court next looks to Wimer's claims against the Defendants that are public entities and any individual Defendants sued in their official capacities. To state a claim for a violation of Title II of the ADA, a plaintiff must show that (1) he has a disability, (2) he is otherwise qualified to receive the benefits of a public service, program, or activity, and (3) he was excluded from

7

participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of his disability. Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 498 (4th Cir. 2005). The United States Court of Appeals for the Fourth Circuit has made clear that claims under the ADA's Title II and Section 504 examined together "because the analysis is substantially the same." Seremith v. Bd. of Cty. Comm'rs Frederick Cty., 673 F.3d 333, 336 n. 1 (4th Cir. 2012). The causes of action differ only with respect to causation. Under the Rehabilitation Act, the plaintiff must establish he was excluded "solely by reason of his disability," while Title II only requires that the disability was "a motivating cause of the exclusion." Wicomico Nursing Home v. Padilla, 910 F.3d 739, 750 (4th Cir. 2018).

The court first examines Wimer's claims related to his learning disability. The court believes that Wimer has alleged enough facts to show that he has a learning disability that affects his ability to read and write. 29 C.F.R. § 1630.2(i) ("Major life activities include . . . reading" and "communicating."). The scope of Wimer's disability, per his own allegations, appears to affect his ability to write, more than communicate generally. Compl. at 4 ("Charles Wimer can communicate better verbally than in writing because of [his] learning disability"). Wimer alleges that he can use a "voice to text" application on his cell phone that aids him in writing, that he has obtained an attorney and pursued FOIA requests, and that he has been able to file complaints at the state and federal level. ECF No. 18. Wimer's pleadings also demonstrate some ability to read and comprehend complex regulations, conduct some legal research, communicate about his findings, arrange for service, and file multiple lawsuits.[4]

---

[4] See, e.g., Wimer v. Whitlock, 3:19-CV-0001 (W.D. Va.); Wimer v. Virginia Combined Court et al., 3:16-CV-00042 (W.D. Va.); Wimer v. Mills, Ph.D. et al., 1:18-CV-00372 (E.D. Va.).

8

Wimer argues that Title II requires that the defendants provide a qualified reader or writer[5] to "write legal documents" and "draft paperwork AKA pleadings" for him in pursuit of civil claims. Compl. & ECF No. 18. The court disagrees. Discrimination under the ADA includes "not making <u>reasonable</u> accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A) (emphasis added). Title II does not require public entities to provide "[a]ttendants, individually prescribed devices, readers for personal use or study, or other devices or services of a personal nature." 28 C.F.R. § 42.503(f). Moreover, a reasonable accommodation "does not require the public entity to employ any and all means to make services available to persons with disabilities." <u>Miller v. Hinton</u>, 288 F. App'x 901, 902 (4th Cir. 2008). "Rather, the public entity is obligated to make those modifications that do not fundamentally alter the nature of the service or activity of the public entity or impose an undue burden." <u>Id.</u>

Neither Title II nor Section 504 require the accommodation Wimer seeks. Wimer effectively requests appointed counsel in civil litigation, or on-demand legal services provided by the Defendants—someone to help him fill out paperwork, "write legal documents" and "draft paperwork AKA pleadings" for him. ECF Nos. 2 & 18. The court concludes that granting Wimer his requested accommodation would "fundamentally alter" the justice system and "impose an undue burden" on the relevant government entities. <u>Miller</u>, 288 F. App'x at 902. Federal courts and court staff may not give litigants legal advice. The court holds the ADA does not require state court staff to do so either. The court dismisses Wimer's claims to this effect with prejudice.

---

[5] "Qualified reader" is a term of art under the ADA, which "means a person who is able to read effectively, accurately, and impartially using any necessary specialized vocabulary." 28 C.F.R. § 35.104. The term "qualified writer" does not appear in the ADA, Section 504, or any corresponding regulations.

Wimer cites to <u>Prakel v. Indiana</u>, 100 F. Supp. 3d 661 (S.D. Ind. 2015), which does not persuade the court to hold otherwise. In <u>Prakel</u>, the court found that the defendants failed to provide the plaintiff—a deaf man who wished to attend and understand the criminal case against his mother—with an interpreter or propose another auxiliary aid or service to ensure effective communication and enable him equal access to the proceedings. 100 F. Supp. 3d at 684. The court reasoned that because it was "undisputed that Mr. Prakel require[d] a qualified sign language interpreter to access spoken communications during court proceedings," he would only be able to understand his mother's criminal proceedings with the assistance of an interpreter. <u>Id.</u> at 682.

Here, the Defendants' behavior—as alleged by Wimer—and the nature of Wimer's disability make <u>Prakel</u> distinguishable. Wimer's non-conclusory allegations show both reasonable accommodations from the Defendants, and Wimer's own ability to access, communicate with, and maneuver in the justice system. Wimer alleges that when he asked for "assistance in filling out" some paperwork, court staff recommended he go to a legal aid and gave significant other assistance to Wimer, including helping him fill out out various forms and requesting documents. <u>See</u> ECF No. 18. Wimer therefore fails to show that defendants denied him reasonable accommodations for his disability. <u>See</u> <u>Fesenmeyer v. Land Bank of KC</u>, No. 4:15-CV-0164, 2015 WL 13344632, at *2 (W.D. Mo. Apr. 15, 2015) (finding no denial of services where, after accommodations, "plaintiff ha[d] been able to successfully participate in the litigation of numerous lawsuits without the need for a 'qualified reader'" and filings evidenced that "plaintiff has not demonstrated an inability to participate in litigation") (typeface modified).

The court next examines Wimer's claims against Central Valley Regional Jail regarding accommodations for his alleged digestive issues. Wimer can show that he has a disability by demonstrating "(1) that he has a physical or mental impairment, (2) that this impairment implicates

10

at least one major life activity, and (3) that the limitation is substantial." Heiko v. Colombo Sav. Bank, F.S.B., 434 F.3d 249, 254 (4th Cir. 2006). Wimer clarifies in his opposition to the Defendants' motions to dismiss that his digestive disorder is stress-induced irritable bowel syndrome. ECF No. 18. Irritable bowel syndrome may qualify as a disability under Title II if it is substantial enough. Simmons v. New York City Transit Auth., 340 F. App'x 24, 26–27 (2d Cir. 2009); see also Heiko, 434 F.3d at 251 ("[E]limination of bodily waste is a 'major life activity' within the meaning of the ADA."); 42 U.S.C. § 12102(2)(B) (defining "major life activity" as including "functions of the . . . bowel"). Wimer has not, however, alleged facts showing that his irritable bowel syndrome is so substantial that it qualifies as a disability under Title II or Section 504.

Wimer's claims fail, even if the allegation that Wimer was "only given Pepto" to treat his irritable bowel syndrome represents an actionable denial of services under Title II. Wimer has failed to plead facts that could show that any of his disabilities motivated any action taken by any of the Defendants. Wimer's claims must therefore be dismissed. See Spencer v. Easter, 109 F. App'x 571, 573 (4th Cir. 2004) (affirming dismissal based on pro se plaintiff's failure to allege animus motivated prison's failure to fill prescription); Miller, 288 F. App'x at 903 ("Insofar as [plaintiff] may be claiming that the institution denied him proper medical care by denying access to colostomy bags and catheters, [plaintiff] failed to show he was treated in this manner because of his disability.").

Finally, the court dismisses Wimer's claims related to vague failures to train various parties. The Fourth Circuit has not "reach[ed] the question of whether the ADA supports a claim for failure to train." See Waller, 556 F.3d at 177 n.2. The court need not decide the question either, because Wimer has failed to allege facts showing that any failure to train resulted in a denial

of services, as found above, or had a discriminatory motivation, even if such claims existed.

### III. State Sovereign Immunity

The Defendants also raise defenses arising from state sovereign immunity and the Eleventh Amendment. Because the court concludes that Wimer has not stated a violation of Title II or Section 504, the court "need not address" whether the Defendants have carried their burden to show that they are entitled to the affirmative defense of immunity. Spencer, 109 F. App'x at 573.

### Conclusion

For the reasons stated, the court grants the Defendants' motions to dismiss. ECF Nos. 8, 12, & 14. The court dismisses with prejudice any claims seeking to overturn Judge Durrer's ruling, which denied Wimer an additional qualified reader and writer in his criminal defense, for lack of subject matter jurisdiction. The court also dismisses with prejudice Wimer's Title II and Section 504 claims, for failure to state a claim, with respect to Defendants' (1) not providing him a qualified reader and writer to assist with court filings and paperwork; (2) providing limited treatment for Wimer's irritable bowel syndrome; and (3) failing to train various parties. Because the court dismisses Wimer's claims, the court also denies Wimer's motion for discovery, (ECF No. 24), and motion for injunctive relief, (ECF No. 25).

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to the plaintiff and all counsel of record.

DATED: This 29th day of October, 2019

_____
Senior United States District Judge